# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 3, 2004 Session

## STATE OF TENNESSEE  v.  STEVAN CRAIG MULLEN

**Direct Appeal from the Circuit Court for Franklin County**
**No. 13972     Buddy D. Perry, Judge**

---

### No. M2003-1123-CCA-R3-CD - Filed March 31, 2004

---

Defendant, Stevan Craig Mullen, was indicted by the Franklin County Grand Jury for driving with an alcohol concentration of .10 or more, in violation of Tenn. Code Ann. § 55-10-401, and for reckless driving, in violation of  Tenn. Code Ann. § 55-10-205.  Following a jury trial, Defendant was convicted of driving with an alcohol concentration of .10 or more and acquitted of reckless driving.  Defendant was sentenced to eleven months and twenty-nine days, with all but forty-eight hours of his sentence suspended.  In addition, his driver's license was revoked for one year, and he was ordered to perform 100 hours of public service work and fined $350.00.  In this appeal as of right, Defendant challenges the trial court's denial of his motion to suppress his breathalyzer test results.  After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Mark Stewart, Winchester, Tennessee, for the appellant, Stevan Craig Mullen.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; J. Michael Taylor, District Attorney General; and William B. Copeland, Assistant District Attorney General, for the appellee, the State of Tennessee.

### OPINION

Deputy Todd Hindman, of the Franklin County Sheriff's Department, testified that on March 4, 2001, at around 3:30 a.m., he observed Defendant, traveling in the opposite direction on Highway 130, drive over the center line.  Deputy Hindman turned around and followed Defendant.  He observed Defendant cross over the center line three more times.  Defendant was driving within the speed limit.  Deputy Hindman turned on his blue lights and stopped Defendant.  Defendant was alone inside the vehicle.  As Deputy Hindman approached Defendant, he noticed an odor of alcohol.  Deputy Hindman also testified that Defendant's speech was slurred.  Defendant stated that he had

been drinking earlier in the evening. Deputy Hindman directed Defendant to step out of his vehicle and asked him to submit to three field sobriety tests. Deputy Hindman left the blue lights on his patrol car on while Defendant performed the tests. Defendant did not perform any of the three tests satisfactorily. Deputy Hindman first asked Defendant to do the "one-legged stand," where a person stands with his feet together, then raises one foot and counts from 1001 to 1030. Defendant lowered his foot before counting to 1010. Next, Deputy Hindman asked Defendant to stand with his feet together, his hands at his side, tilt his head back, close his eyes, and touch the tip of each index finger to the tip of his nose. Defendant missed his nose both times. Finally, Deputy Hindman asked Defendant to walk nine steps, heel to toe, and on the ninth step, pivot and take nine steps back. There were no painted lines on the highway to use as a guide, so Defendant had to use an imaginary line. Defendant took only "a few steps," and he did not place his feet heel to toe, stating to Deputy Hindman that he was "too drunk to do the test." Deputy Hindman transported Defendant to the Franklin County Jail.

After Deputy Hindman arrived at the jail with Defendant, Defendant agreed to submit to a breath alcohol test. Deputy Hindman read to Defendant an implied consent form, and Defendant signed it. Deputy Hindman made a phone call. Deputy Hindman testified that he was certified to operate the intoximeter. He also testified that he observed Defendant for twenty minutes prior to administering the test. During the observation period, Defendant was seated on a bench near the entrance to the jail. Deputy Hindman stood on the opposite side of a counter facing Defendant. Deputy Hindman testified that he stood approximately twenty feet away from Defendant. He also testified that he had a direct view of Defendant for the entire twenty minutes. Deputy Hindman did not observe Defendant burp, regurgitate, or ingest anything.

Deputy Hindman testified that Defendant was seated on a bench, and he sat there for the entire twenty-minute observation period. Deputy Hindman testified that Defendant did not leave the bench to go to the bathroom during the twenty-minute observation period. Deputy Hindman also testified that he did not do any paperwork during the twenty-minute observation period. Deputy Hindman testified that Defendant was very cooperative.

A videotape taken from inside the booking area of the Franklin County Jail showed Deputy Hindman arrived with Defendant at 4:06 a.m. Deputy Hindman testified that he made a phone call while Correctional Officer Daniel Wilcox removed Defendant's handcuffs and searched Defendant. Deputy Hindman testified that he printed out the previous test from the intoximeter, but he did not enter any data into the intoximeter during the observational period. The videotape of Defendant lasts for approximately three minutes. The intoximeter report showed that the breath test was conducted at 4:23 a.m.

Jail Administrator Beth Rhoton, of the Franklin County Sheriff's Department, testified that an agent from the Tennessee Bureau of Investigation calibrates and certifies the Intoximeter EC-IR at the Franklin County jail every three months. The intoximeter was last calibrated before Defendant's arrest on February 15, 2001. The next time the intoximeter was checked after Defendant's arrest was on May 15, 2001. Ms. Rhoton testified that the clocks in the jail and the

clock on the intoximeter were not synchronized by her. The breath test showed that Defendant had a blood alcohol content of .14.

Defendant testified that he worked as an insulation supervisor and sheet metal mechanic at Palmer Heating and Air. Defendant testified that he went to a cookout with some friends and coworkers on March 3, 2001. He arrived at the cookout at around 1:00 p.m. Defendant drank three beers before eating dinner. After dinner, Defendant opened a fourth beer, but he did not finish drinking it. That evening, Defendant fell asleep while watching television at his friend's house. Defendant had to be at work at 6:00 a.m. on the following morning. He woke up in the early morning hours of March 4, 2001, and drove home. Defendant pulled his truck over immediately when he saw blue lights. Defendant admitted to the officer that he had been drinking earlier. The officer asked for Defendant's driver's license and walked back to his patrol car. Defendant was nervous, and he sat in his truck and smoked a cigarette. The officer approached Defendant's truck and asked him to step out. The officer asked Defendant how far he had gone in school, and Defendant stated that he graduated from high school. The officer then said, "I assume you know your alphabet," and Defendant responded that he did, but that he could not say the alphabet backwards. The officer "snapped" at Defendant and said, "I didn't ask you to say 'em backwards." The officer asked Defendant to recite the alphabet, and Defendant did so. Defendant testified that it was dark outside and the officer's blue lights were on. The officer's headlights were also on, and there were "plenty of lights." Defendant stood in front of the officer's patrol car to perform the field sobriety tests.

Defendant testified that the officers at the jail treated him with respect and it was a "relaxed atmosphere." Defendant testified that he did not sit on the bench for the entire period of time before taking the breath alcohol test. Defendant left the bench where he was sitting to go to the bathroom. He also "chatted" with some of the officers. Defendant discovered that the arresting officer's name was Hindman while he was at the jail, and he was "shocked" to learn that he knew members of Deputy Hindman's family. Defendant testified, "I said, 'Who's Hindman?' you know just like that, and I specifically remember he was behind the counter and he stood up just like that, and he said, 'Well, that's me.'" Defendant testified that he was not intoxicated or impaired when he drove home on the night of the incident. Defendant testified that he did not tell Deputy Hindman that he was too drunk to complete the "heel to toe" field sobriety test.

Defendant filed a motion to suppress the breath test evidence on the day of trial. The trial court ruled that the motion was not timely filed. In *State v. Cook*, 9 S.W.3d 98, 101 (Tenn. 1999), our supreme court held that an accused's objection to the admissibility of blood alcohol content test results on the ground that the State had not laid a proper foundation as required by *State v. Sensing*, 843 S.W.2d 412 (Tenn. 1992), may be made during trial rather than in a pretrial motion to suppress. Therefore, the motion to suppress was timely.

Although the trial court ruled that the motion to suppress was not timely filed, it nevertheless ruled that the breath test was admissible. The trial court did not conduct a jury-out hearing, however,

to determine the admissibility of the breath test results as was done by the trial court in *Cook*. At the close of the State's proof, the trial court ruled, outside the presence of the jury, as follows:

> Now for the record, I stated earlier the motion to suppress was not timely filed and I was going to go forward with the jury trial. I've heard the testimony along with the jury and I'm going to rule on the motion to suppress. I think the evidence is such that the breathalyzer, in fact, was admissible.

Tennessee Rule of Evidence 104(c) provides that hearings on preliminary evidentiary matters may be conducted out of the hearing of the jury when the interests of justice require. Trial courts have broad discretion in determining whether to have a hearing outside the jury's presence. *See Cook*, 9 S.W.3d at 102. This Court has previously concluded that a trial court should ordinarily conduct a jury-out hearing on the *Sensing* foundational requirements. Otherwise, a trial court might find that the *Sensing* requirements were not satisfied, but the jury might have heard the prejudicial testimony. *State v. Donald Lee Reid*, No. M2000-02026-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 699 (Tenn. Crim. App. at Nashville, filed September 7, 2001), *no perm. to app. filed*.

In *Sensing*, the supreme court established criteria for the admission into evidence of breath-alcohol tests:

> [T]he testing officer must be able to testify (1) that the tests were performed in accordance with the standards and operating procedure promulgated by the forensic services division of the Tennessee Bureau of Investigation, (2) that he was properly certified in accordance with those standards, (3) that the evidentiary breath testing instrument used was certified by the forensic services division, was tested regularly for accuracy and was working properly when the breath test was performed, (4) that the motorist was observed for the requisite 20 minutes prior to the test, and during this period, he did not have foreign matter in his mouth, did not consume any alcoholic beverage, smoke, or regurgitate, (5) evidence that he followed the prescribed operational procedure, (6) identify the printout record offered in evidence as the result of the test given to the person tested.

843 S.W.2d at 416.

At trial, the State must establish by a preponderance of the evidence that these six requirements for admissibility were satisfied. *State v. Edison*, 9 S.W.3d 75, 77 (Tenn. 1999). On appeal, a trial court's decision to admit a breath-alcohol test result under *Sensing* will be presumed correct unless the evidence preponderates otherwise. *Id*.

Defendant asserts that the twenty-minute observation period was not satisfied. The twenty-minute observation requirement carries with it two distinct elements. First, the officer must have observed the defendant for twenty-minutes. *State v. Arnold*, 80 S.W.3d 27, 29 (Tenn. Crim. App. 2002). "An officer may not guess, estimate or approximate the amount of time the subject was under

observation." Second, "the State must establish that the subject did not smoke, drink, eat, chew gum, vomit, regurgitate, belch or hiccup during the twenty minutes prior to taking the test." *Id*. (citations omitted). The reason for the twenty-minute observation period is to ensure that no foreign matter is present in the defendant's mouth that could retain alcohol and potentially influence the results of the test. *Sensing*, 843 S.W.2d at 416.

The fourth *Sensing* requirement has received significant attention by the appellate courts. In *State v. McCaslin*, 894 S.W.2d 310 (Tenn. Crim. App. 1994), the officer testified that he placed the defendant in the backseat of his patrol car and drove away from the arrest scene at 2:20 a.m. The officer testified that the drive to the police station took approximately ten minutes. The officer administered the breath-alcohol test at 2:46 a.m. *Id*. at 310. Although the defendant was in the officer's presence for the entire twenty-minute period, the officer continuously observed the defendant for only sixteen minutes at the police station prior to administering the breath test. *Id*. at 311. This Court concluded that the officer could not adequately observe the defendant in the patrol car while driving to the police station. *Id*. at 312.

In *State v. Deloit*, 964 S.W.2d 909 (Tenn. Crim. App. 1997), the officer observed the defendant for fifteen minutes while conducting field sobriety tests. The officer then watched defendant in the rearview mirror of the patrol car for an additional ten to thirteen minutes while he completed paperwork in the front seat of the patrol car. The officer admitted that he could not see the defendant while he was writing. *Id*. at 915. This Court held that the officer did not satisfy the twenty-minute observation period because he did not continuously observe the defendant for the requisite twenty minutes. *Id*. at 916.

In *State v. Arnold*, 80 S.W.3d 27 (Tenn. Crim. App. 2002), two officers transported the defendant to the jail. Both officers sat in the front seat of the patrol car, and Defendant sat handcuffed in the backseat of the patrol car. The testing officer testified that he did not continuously observe the defendant during the drive to the jail. One of the officers testified that he took his eyes off the defendant periodically during the drive and while exiting the vehicle, but the defendant did not belch, regurgitate, or place anything in his mouth during the twenty-minutes prior to the breath alcohol test. *Id*. at 28. This Court held that the State failed to establish by a preponderance of the evidence that the officers complied with the fourth *Sensing* requirement. Distractions such as road noise and noise from the police radio and the fact that the defendant was alone in the backseat of the patrol car prevented the court from concluding that the twenty-minute observation was satisfied. *Id*. at 30-31.

In *State v. Korsakov*, 34 S.W.3d 534 (Tenn. Crim. App. 2000), the officer testified that he observed the defendant from the time they arrived at the jail at 2:45 a.m. until he administered the test at 3:19 a.m. The officer stood across from the defendant and filled out paperwork during that time period. The officer testified that he would have heard or smelled anything that defendant did that could have corrupted the test results. *Id*. at 538. This Court held that although *Sensing* does not require an "unblinking gaze for twenty minutes," the officer must be watching the defendant rather than performing other tasks." *Id*. at 541.

The rationale for the exclusion of the breath test results in *McCaslin* and the above cases was that the State did not establish that the officers continuously observed the defendants with their eyes and without distraction. In *State v. Harold E. Fields*, No. 01C01-9412-CC-00438, 1996 Tenn. Crim. App. LEXIS 219, (Tenn. Crim. App. at Nashville, April 12, 1996), *no perm. to app. filed*, this Court stated as follows:

> That an officer remained in the room with the defendant for twenty minutes prior to testing will not satisfy the requirements of *Sensing*. *Sensing* requires the State to establish that during those twenty minutes nothing occurred which would compromise the validity of the breath alcohol test. Where an officer can testify that he or she continuously observed the test subject, with his or her eyes, for the entire twenty-minute observational period, the State will in almost all cases be able to meet this requirement of *Sensing*.

In the case at bar, Deputy Hindman testified that he observed Defendant in the booking area of the jail for twenty-minutes, that he had a direct view of Defendant, that Defendant remained seated on the bench in the booking area for the entire twenty-minute observation period, and that Defendant did not burp, regurgitate, or ingest anything. Deputy Hindman also testified that he timed the observation period using his own watch. The trial court clearly accredited the testimony of Deputy Hindman.

The videotape does not indicate otherwise. The videotape shows Deputy Hindman arrive at the jail with Defendant at 4:06 a.m. Deputy Hindman and Defendant entered the booking area of the jail together, and Deputy Hindman then walked behind the counter and made a telephone call. Deputy Hindman is seen using the telephone for approximately one minute. During that time, another officer removed Defendant's handcuffs and personal belongings and then searched Defendant. Defendant then sat on a bench at the entrance of the booking area and removed his shoes and handed them to the searching officer. The segment of the videotape that shows Defendant in the booking area of the jail ends at 4:10 a.m. While Deputy Hindman is seen performing other tasks for the three minutes that was recorded, he testified at trial that he continuously and directly observed Defendant for twenty minutes prior to administering the breath alcohol test. The videotape does not show Deputy Hindman's observation of Defendant, which, Deputy Hindman testified, began after Deputy Hindman placed a telephone call and removed the previous intoximeter report, and after Defendant was searched and seated on the bench. Although the intoximeter report indicated that Defendant's breath-alcohol test was conducted at 4:23 a.m., the proof in the record infers that the clocks on the intoximeter and the videotape recorder were not synchronized.

None of the cases citing *Sensing* specifically addresses the issue of distance between the observing officer and the defendant. We decline to establish a bright-line rule regarding whether a distance of twenty feet between the observing officer and the defendant is insufficient to satisfy the fourth requirement of *Sensing*. After reviewing the facts of this case, we conclude that the State met its burden, and the trial court properly admitted into evidence the breath-alcohol test. Defendant is not entitled to relief in this appeal.

## CONCLUSION

The judgment of the trial court is affirmed.

_____

THOMAS T. WOODALL, JUDGE